UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LAWRENCE R. DICKERSON,          :
        Plaintiff,              :
                               :
    v.                          :      CA 05-244 M
                               :
JO ANNE B. BARNHART,            :
COMMISSIONER OF SOCIAL SECURITY, :
        Defendant.              :

### MEMORANDUM AND ORDER

This matter is before the Court on a request for judicial
review of the decision of the Commissioner of Social Security
("the Commissioner"), denying Disability Insurance Benefits
("DIB"), under § 205(g) of the Social Security Act, as amended,
42 U.S.C. § 405(g) ("the Act").  Plaintiff Lawrence R. Dickerson
("Plaintiff") has filed a motion to reverse and remand.
Defendant Jo Anne B. Barnhart ("Defendant") has filed a motion
for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a
magistrate judge for all further proceedings and the entry of
judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ.
P. 73.  For the reasons set forth herein, I find that the
Commissioner's decision that Plaintiff is not disabled is
supported by substantial evidence in the record.  Accordingly,
based on the following analysis, I order that Defendant's Motion
for an Order Affirming the Decision of the Commissioner (Document
("Doc.") #8) ("Motion to Affirm") be granted and that Plaintiff's
Motion for Judgement Reversing Decision (Doc. #7) ("Motion to
Remand") be denied.

### Facts and Travel

Plaintiff was born on November 9, 1954.  (Record ("R.") at
21, 97)  He has a limited education.  (R. at 21, 128)  In the

relevant past he worked as a school bus driver, janitor, and temporary post office clerk.  (R. at 21, 128)

Plaintiff filed an application for DIB in April, 1998, alleging disability since November 9, 1990, due to a combination of physical and emotional disorders.[1]  (R. at 21, 126)  The application was denied initially and on reconsideration, and in December, 1998, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (R. at 20, 65-75, 76)  ALJ Hugh S. Atkins conducted a hearing on October 4, 1999, at which Plaintiff and his wife appeared and testified.  (R. at 20, 34-64)  Also present but not testifying at the hearing was a vocational expert.  (R. at 34-35)  On November 4, 1999, ALJ Atkins issued a decision in which he found that Plaintiff was not disabled.  (R. at 17-30)  Review of ALJ Atkins' decision by the Appeals Council was requested, and on September 10, 2002, the Appeals Council, as the record had been misplaced, vacated the hearing decision and remanded the case for reconstruction of the documentary record and a *de novo* hearing.  (R. at 12-14, 15)  On January 28, 2005, after re-locating the record, the Appeals Council vacated its remand order.  (R. at 6-8)  The Appeals Council subsequently denied Plaintiff's request for review, thereby rendering the ALJ's November 4, 1999, decision the final decision of the Commissioner.  (R. at 3-5)

A Complaint (Doc. #1) was filed in this Court on June 3, 2005.  Defendant on August 4, 2005, filed her Answer (Doc. #4).  An Order referring the case to Magistrate Judge David L. Martin (Doc. #5) was entered on August 17, 2005.  On October 17, 2005, the Motion to Remand (Doc. #7) was filed, followed on November 18, 2005, by the Motion to Affirm (Doc. #8).  Plaintiff's Reply

---

[1] Specifically, he alleged "severe constant back pain, depression and anxiety, sleep [disorder], side effects of medication, diabetes[,] numbness in legs and feet [and] fingers[.]"  (R. at 126)

2

Memorandum (Doc. #9) ("Plaintiff's Reply") was filed on December 1, 2005.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed de novo, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 222 (citing Richardson v. Perales,

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

3

402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. § 404.1521(a) (2006).  A claimant's complaints alone cannot provide a basis for

---

[3] Plaintiff met the insured status requirements as of November 9, 1990, the alleged onset of his disability, and was insured through September 30, 1997. (R. at 21, 24)

[4] Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2006).  Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

entitlement when they are not supported by medical evidence. <u>See</u>
<u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21 (1st
Cir. 1986).

The Social Security regulations prescribe a five-step
inquiry for use in determining whether a claimant is disabled.
<u>See</u> 20 C.F.R. § 404.1520(a) (2006); <u>see also</u> <u>Bowen v. Yuckert</u>,
482 U.S. 137, 140-42, 107 S.Ct. 2287, 2290-91 (1987); <u>Seavey v.</u>
<u>Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that
scheme, the Secretary must determine sequentially: (1) whether
the claimant is presently engaged in substantial gainful work
activity; (2) whether he has a severe impairment; (3) whether his
impairment meets or equals one of the Commissioner's listed
impairments; (4) whether the claimant is able to perform his past
relevant work; and (5) whether the claimant remains capable of
performing any work within the economy. <u>See</u> 20 C.F.R. §
404.1520(b)-(g).  The evaluation may be terminated at any step.
<u>See Seavey</u>, 276 F.3d at 5.  "The applicant has the burden of
production and proof at the first four steps of the process.  If
the applicant has met his or her burden at the first four steps,
the Commissioner then has the burden at Step 5 of coming forward
with evidence of specific jobs in the national economy that the
applicant can still perform." <u>Freeman v. Barnhart</u>, 274 F.3d 606,
608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since the alleged onset
of his disability on November 9, 1990, (R. at 24); that prior to
the lapse of his disability insured status on September 30, 1997,
Plaintiff's non-insulin dependent diabetes and chronic back pain
were severe impairments, but that they did not meet or equal a
listed impairment, (R. at 25); that the degree of incapacity

alleged by Plaintiff was not consistent with the record as a whole, (R. at 25); that prior to Plaintiff's date last insured, he had the residual functional capacity ("RFC") to perform a full range of light work, (id.); that this RFC precluded performance of Plaintiff's past relevant work, (id.); and that the Medical-Vocational Guidelines, 20 C.F.R., part 404, subpart P, Appendix 2 (the "Grid"),[5] directed a conclusion that based on Plaintiff's RFC, age, education, and work experience, he was not disabled, (R. at 25-26).

### Errors Claimed

Plaintiff alleges that: 1) the ALJ erred as a matter of law by failing to consider the retrospective opinion of treating psychiatrist Edmund Zeldin, M.D., see Memorandum of Law in Support of Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner ("Plaintiff's Mem.") at 15-17; 2) substantial evidence does not support the ALJ's finding that Plaintiff had the RFC for a full range of light work, id. at 17-19; and 3) the ALJ erred as a matter of law by relying on the Grid at step five of the sequential analysis where Plaintiff's occupational base was reduced by a nonexertional impairment, id. at 19-20. The Court addresses each of these claims, albeit in a different order.

---

[5] The "Grid" is a tool utilized at Step Five, Rasmussen-Scholter v. Barnhart, No. Civ.A 03-11889-DPW, 2004 WL 1932776, at *12 (D. Mass. Aug. 16, 2004), which is designed to enable the Commissioner to satisfy her burden "in a streamlined fashion without resorting to the live testimony of vocational experts," Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989)(citation and internal quotation marks omitted). The Grid consists of a matrix of a claimant's exertional capacity, age, education, and work experience. Quintana v. Comm'r of Soc. Sec., 294 F.Supp.2d 146, 150 (D.P.R. 2003); see also 20 C.F.R. pt. 404, subpt. P, app. 2. "If the facts of the applicant's situation fit within the Grid's categories, the Grid 'directs a conclusion as to whether the individual is or is not disabled.'" Quintana, 294 F.Supp.2d at 150 (citing regulations).

## Discussion

I.   **Whether substantial evidence supports RFC finding for full range of light work**

Plaintiff argues that the ALJ's RFC finding for the full range of light work, undiminished by mental impairments, is not supported by substantial evidence.  See Plaintiff's Mem. at 17-19.  Specifically, Plaintiff maintains that the ALJ incorrectly weighed the evidence, adopting the conclusions of two non-examining state agency physicians that Plaintiff was not suffering from a severe mental impairment as of his date last insured over the contradictory opinion of a treating psychiatrist.  Id.  Defendant counters that the ALJ adequately considered all of the relevant evidence concerning Plaintiff's mental state during the appropriate time period and that substantial evidence supports the ALJ's finding that Plaintiff failed to establish the existence of a medically determinable mental impairment during his insured period, see Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 12.

It is Plaintiff's burden to establish by credible evidence that his mental impairment was of disabling severity as of his date last insured, September 30, 1997.  Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).  "It is not sufficient for him to establish that his mental impairment had its roots prior to that date."  Deblois, 686 F.2d at 79; see also 20 C.F.R. § 404.1512(c) (2006).[6]

---

[6] Section 404.1512(c) reads in relevant part:

Your responsibility.   You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.   You must

7

While Plaintiff alleges disability since 1990,[7] the first record of any psychological treatment prior to the date last insured was on February 26, 1996, when Plaintiff was evaluated by Sergio DeConno, A.C.S.W., for feelings of depression, difficulty sleeping, irritability, and lack of energy.  (R. at 164-67, 169)  Plaintiff told Mr. DeConno that his symptoms began approximately three years prior, but had worsened in the last year due to increased stress over finances and family.  (R. at 164)  In his notes, Mr. DeConno described Plaintiff as "a somewhat passive man who feels helpless in light of his various physical problems to alter his life."  (R. at 166)  He observed that Plaintiff appeared depressed, but also noted that "[h]e was alert and oriented and there were no apparent thought disorders.  His memory was intact."  (Id.)  Mr. DeConno diagnosed Plaintiff with adjustment disorder with depressed mood and passive-aggressive personality disorder and referred him for a medical evaluation, but with the following warning:

> The patient specifically came in looking for medicine. He feels that he would like to be more level headed with his children and more optimistic about the future.  I cautioned him that many of the problems that he is experienc[ing], i.e., financial difficulties, and parent-child difficulties[,] are not going to be relieved by medicine.

---

provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.

20 C.F.R. § 404.1512(c) (2006).

[7] As Plaintiff does not contest the ALJ's findings regarding the severity of his physical limitations, discussion of the medical record is limited to evidence pertaining to Plaintiff's alleged mental impairments.

(R. at 167)  Mr. DeConno also told Plaintiff that his poorly
controlled diabetes may be causing his depressive symptoms, which
Plaintiff "flatly refused" to accept.  (Id.)

Pursuant to DeConno's referral, Plaintiff began seeing
Timothy Rivinus, M.D., on April 4, 1996.  (R. at 170)   In his
initial evaluation, Dr. Rivinus diagnosed Plaintiff with major
depression, post-traumatic stress disorder, learning disabilities
and probable attention defecit/hyperactivity disorder, insomnia,
and diabetes mellitus.  (R. at 171)  Dr. Rivinus also noted a
"psychological reaction to diabetes."  (Id.)  He prescribed
Prozac for depression and Elavil for insomnia and gave Plaintiff
a list of suggestions for healthier living, including
"begin[ning] a swimming program at the YMCA, us[ing] a punching
bag for frustration, ... pursuing his GED, attending back
classes, and avoiding muscle relaxants and alcohol."  (R. at
172).

Plaintiff saw Dr. Rivinus eight more times over the next
seventeen months, until October 20, 1997, (R. at 173, 175, 270-
71),[8] twenty days after his date last insured.  In his notes from
the first follow-up meeting, dated May 6, 1996, Dr. Rivinus
remarked that Plaintiff "appear[ed] sufficiently depressed that
it [was] difficult to go over the list of suggestions made with
him in any detail for fear of reinforcing his sense of failure."
(R. at 173)  By July 2, 1996, the date of their second follow-up
meeting, Plaintiff was said to be "sleeping considerably better,"
(id.), and "feeling comfortable with the exception of the fact
that his son and foster child are fighting in the house," (id.).
Dr. Rivinus recommended that Plaintiff return in three months
time.  (Id.) The notes from the third follow-up meeting on
September 24, 1996, and all subsequent meetings, including the

---

[8] Pages 270-71 are duplicates of pages 173 and 175.  For
simplicity, the Court cites only to pages 173 and 175.

October 20, 1997, meeting, are contained on one hand-written page and are largely illegible. (R. at 175)  The entries grow increasingly brief.  While the notes appear primarily to concern adjustments made to Plaintiff's medication,[9] several references to "dysthymia"[10] are made.  (Id.)  Dr. Rivinus's final notation on October 20, 1997, indicated that Plaintiff was "doing well." (Id.)

There is no further mental health treatment on record for the next thirteen months, until November 1998.  In this interim period, however, two Disability Determination Services ("DDS") reviewers evaluated the above evidence.  On June 9, 1998, David Gianetti, M.D., determined that Plaintiff's mental impairments were not severe for the roughly two year period prior to the date last insured,[11] but that there was insufficient evidence upon which to base completion of a Psychiatric Review Technique Form ("PRTF").  (R. at 209-10)  He remarked that the treatment notes from Harvard Health prior to the date last insured "indicate no mental/emotional disorder(s)," (R. at 210), and that Plaintiff "had responded well to treatment by 10/97 (or earlier)," (id.).

On October 15, 1998, a second state agency expert, Mary Ann

---

[9] For example, Plaintiff's dosage of Prozac was increased on February 6, 1997, and then reduced again on October 20, 1997.  (R. at 175)

[10] Dysthymia is defined as "a mood disorder characterized by chronic mildly depressed or irritable mood often accompanied by other symptoms (as eating and sleeping disturbances, fatigue, and poor self-esteem) ...."  Merriam Webster's Medical Desk Dictionary 369 (1996).

[11] Dr. Gianetti found Plaintiff's mental impairments not severe for the time period between November, 1995, three months prior to the first record of psychological treatment, through his date last insured in September 1997.  (R. at 209-10)  Somewhat inconsistently, Dr. Gianetti also indicated that there was insufficient medical evidence of mental impairments in the record from the alleged onset date of January, 1990, through his date last insured and from October 1997, the date of Plaintiff's last meeting with Dr. Rivinus, through the date of review in June 1998.  (Id.)

Paxson, Ph.D., also reviewed the above evidence and concluded that Plaintiff's mental impairments were not severe.  (R. at 228)  Specifically, Dr. Paxson found only slight limitations in the areas of restriction of daily living activities and maintaining social functioning, insufficient evidence to assess deficiencies in concentration, persistence, or pace, and no episodes of deterioration in a work setting.  (R. at 235)  She based her assessment on an examination of the record from February 1996, when Plaintiff was first seen by Sergio DeConno, ASCW, until September 1996.[12]  (Id.)  She indicated that there was insufficient medical evidence upon which to make an assessment from the period prior to February 1996 and subsequent to September 1996.  (Id.)

Dr. Zeldin began treating Plaintiff on November 10, 1998, approximately thirteen months after the date last insured.  (R. at 269)  Plaintiff's main complaints at the initial meeting were "irritability and tiredness," (id.), and Dr. Zeldin made adjustments to Plaintiff's medications,[13] (id.).  By March 16, 1999, after further reducing Plaintiff's dosage of Prozac, Dr. Zeldin reported that there had "been some marginal improvement in [Plaintiff's] mood ... [and] ... [h]is wife thinks that he is calmer and less irritable."  (R. at 268)  On April 27, 1999, Dr. Zeldin noted that "[Plaintiff] is fairly stable; functioning

---

[12] The Court assumes that the September 1996 date refers to when Dr. Rivinus's notes become hand-written and difficult to decipher.

[13] Dr. Zeldin's notes from this meeting indicate that Plaintiff had been prescribed Lithium Carbonate daily and that his dosage of Prozac had been increased.  (R. at 269)  There is no indication in the record when the adjustments to his medications were made or by whom. Dr. Zeldin, remarking that "[t]here is no mention, whatever, of Lithium Carbonate in the patient's file," (id.), immediately took Plaintiff off the Lithium, began reducing his dosage of Prozac, (id.), and considered adding Wellbutrin to alleviate the side effects, (id.).

reasonably well[.]  I am maintaining him on his present meds ....
I have advised him to resume counselling ...."  (R. at 268)

On August 17, 1999, Dr. Zeldin met with Plaintiff "primarily
to gather information that [he] could use for filling out
[Plaintiff's] disability application form," (R. at 249), and made
the following advisement:

> "[Plaintiff's] back injury as well as his ongoing
> depression, irritability and social phobia truly prevent
> him from holding any job whatever.  In fact, I think
> that, given his irritability and violent impulses, he
> could be a danger in a workplace.  I am, therefore,
> filling out his disability application with the advice
> that he is totally and permanently disabled, despite his
> ongoing treatment for depression."

(Id.)  On the same date, Dr. Zeldin completed a PRTF in which he
noted that Plaintiff's psychological limitations met listing
12.04 (Affective Disorders) and 12.06 (Anxiety Related
Disorders).  (R. at 240)  Dr. Zeldin concluded that Plaintiff "is
chronically depressed, and cannot concentrate.  When he is around
people he becomes tense, anxious, avoidant and slightly paranoid.
This can stimulate hostile or even violent impulses.  These
symptoms, together with pain and limitation of movement from a
back injury, render him entirely incapable of working in any
job."  (R. at 241)  Specifically, Dr. Zeldin found marked
limitations in the areas of restriction of activities of daily
living activities and maintaining social functioning, frequent
deficiencies in concentration, persistence, or pace, and repeated
episodes of deterioration in a work setting.  (R. at 247)  Dr.
Zeldin also completed a supplemental RFC assessment which rated
Plaintiff as severely or moderately severely limited in nearly
all functional categories.[14]  (R. at 238-39)  Dr. Zeldin also

---

[14] Plaintiff's degree of limitation was rated as moderately severe
in his ability to relate to other people, ability to understand, carry
out, and remember instructions, and ability to perform complex,

12

opined that the degree of impairment had existed since 1993.   (R.
at 239)   Where asked on the form if a psychological evaluation
was obtained, Dr. Zeldin responded that "the clinical history is
sufficient."   (Id.)

Their last meeting of record was on September 3, 1999.   (R.
at 249)   Dr. Zeldin described Plaintiff as "very down in the
dumps," (id.), as having "vague suicidal ideation," (id.), and as
"worried about the outcome of his disability hearing...," (id).

Regarding Plaintiff's alleged mental impairments, the ALJ
stated:

> [Plaintiff] has a personality disorder, with chronic
> inability to take responsibility for his own actions.  He
> was also, prior to the date last insured, suffering from
> a minor degree of depression (20 CFR 404.1521).  Again,
> [Plaintiff] failed to enact a number of lifestyle changes
> which Dr. Rivinus felt would alleviate his complaints,
> and refused any counseling in conjunction with his
> medication.  Dr. Rivinus cautioned [Plaintiff] that his
> poorly controlled diabetes could be responsible for his
> depressive symptoms, again with no attempts at increased
> compliance by the claimant.
>   Based upon the above, including the testimony at the
> hearing, the evidence of record, and the fully supported
> and consistent assessments of the non-examining physician
> reviewers at the initial and reconsideration levels
> (Social Security Ruling ["SSR"] 96-6p)[,] ... [Plaintiff]
> retains the residual functional capacity for the full
> range of light work ....

(R. at 23)   Thus, the ALJ implicitly found that Plaintiff did not
suffer from a severe mental impairment prior to his date last
insured.   Plaintiff, however, asserts that "[t]he evidence leaves
no doubt of the existence of mental disorders," Plaintiff's Mem.

---

repetitive, and varied tasks.  (R. at 238-39)  Plaintiff's degree of
restriction of activities of daily living and constriction of
interests were also rated as moderately severe, according to Dr.
Zeldin.  (R. at 238)  Plaintiff was rated as severely limited in his
ability to respond appropriately to supervision, co-workers, and
customary work pressures.  (Id.)

at 18, and challenges the ALJ's reliance on the opinions of non-examining physician reviewers over that of treating psychiatrist Dr. Zeldin, <u>see</u> Plaintiff's Mem. at 17-19.

While it is true that "the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources," SSR 96-6p, 1996 WL 374180 (S.S.A.), at *2-3, the First Circuit has not adopted any rule which requires the ALJ to give greater weight to the opinion of a treating physician over that of a non-examining medical advisor, <u>see Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 89 (1st Cir. 1991)("The law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians"); <u>Tremblay v. Sec'y of Health & Human Servs.</u>, 676 F.2d 11, 13 (1st Cir. 1982)(noting that First Circuit has repeatedly refused to adopt any per se rule that treating physician's opinion should have been given greater weight than that of consulting physician).  Whether the opinion of a non-examining medical advisor can alone constitute substantial evidence depends upon the circumstances.  <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d 742, 744 (1st Cir. 1989); <u>Guzman Diaz v. Sec'y of Health, Educ. & Welfare</u>, 613 F.2d 1194, 1199 n.7 (1st Cir. 1980)(noting that whether the testimony of a medical expert who reviews the record could constitute substantial evidence "var[ies] with the circumstances, including the nature of the illness and the information provided to the expert").  An ALJ may reject a treating physician's conclusions regarding disability when the record contains contradictory medical advisor evidence.  <u>See Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 275 n.1 (1st Cir. 1988)("It is within the [Commissioner's] domain to give greater weight to the testimony

14

and reports of medical experts who are commissioned by the [Commissioner].”); Lizotte v. Sec'y of Health & Human Servs., 654 F.2 127, 130 (1st Cir. 1981)(same)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971)).  This is especially true where substantial evidence supports the non-examining medical advisor's findings, Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 223 (1st Cir. 1981), as is the case here.

There is no evidence of psychological treatment between the alleged onset date of November 9, 1990, until the DeConno evaluation in February 1996, despite Plaintiff's statement to Mr. DeConno in his initial evaluation that his symptoms began as early as 1993.  (R. at 164, 167)  Therefore, substantial evidence supports Drs. Gianetti and Paxson's conclusion that there is insufficient evidence upon which to base a finding of severe mental impairment from this period.  See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (viewing "gaps in the medical record as 'evidence'").  The fact that Plaintiff did not pursue treatment until 1996 further suggests that his mental condition was not severe prior to this date.  Cf. id. at 770 ("We do not think that a claimant with a diagnosed impairment may assert entitlement to disability benefits without at least securing a determination concerning what, if any, treatment options are available to him or her.").

The only evidence of psychological treatment during the relevant period are sporadic notes between February 26, 1996, through October 20, 1997, twenty days after Plaintiff's date last insured.  (R. at 170-75)  Mr. DeConno's February 26, 1996, evaluation, (R. at 164-67, 169), contains the most detailed observations of Plaintiff on record.  The notes indicate an unwillingness on Plaintiff's part to take responsibility for problems that Mr. DeConno opined were exacerbating his mental

condition.  (R. at 1670; see also (R. at 169).  Despite the
diagnoses of adjustment disorder with depressed mood and passive
aggressive personality disorder, Plaintiff went to Mr. DeConno
specifically looking for medication and "flatly refused" to
entertain the idea that his depressive symptoms may be caused in
part by his poorly controlled diabetes.  (R. at 167)  Moreover,
when asked by Mr. DeConno about his work history, Plaintiff never
attributed his inability to find work to his psychological
symptoms, but solely to his back pain. (R. at 164, 166)

    While it is true that Plaintiff's treating psychiatrist from
the relevant period, Dr. Rivinus, initially diagnosed him with
major depression and post-traumatic stress disorder, it is well
accepted that a diagnosis is not the equivalent of a disability
as defined by the Act, see Torres v. Barnhart, 249 F.Supp.2d 83,
97 (D. Mass. 2003)("[J]ust because [the plaintiff] suffers from
depression and anxiety simply does not mean, a fortiorari, that
she has 'any impairment or combination of impairments which
significantly limits [her] physical or mental ability to do basic
work activities.'"(third alteration in original); see also
Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)("The mere
existence of an impairment is insufficient proof of a
disability."); Musto v. Halter, 135 F.Supp.2d 220, 225-26 (D.
Mass. 2001)("[E]vidence of an impairment is not enough to warrant
an award of benefits; there must also be evidence in the record
that the impairment prevented the claimant from engaging in any
substantial activity."); 20 C.F.R. § 404.1521 ("An impairment or
combination of impairments is not severe if it does not
significantly limit your physical or mental ability to do basic
work activities.").  Indeed, Plaintiff concedes that Dr.
Rivinus's notes do not address the functional effect of
Plaintiff's mental condition.  See Plaintiff's Mem. at 19
(stating that only Drs. Zeldin, Gianetti, and Paxson "addressed

the functional effect of [Plaintiff's] mental impairment").  Dr.
Rivinus's notes, like those of Mr. DeConno, suggest that
Plaintiff was unwilling to enact the lifestyle changes
recommended to him.  In their initial meeting, Dr. Rivinus
developed a plan for Plaintiff which consisted of a combination
of medical and non-medical remedies, including further counseling
for his family, exercise, and pursuing his GED.  (R. at 172)
There is little evidence that Plaintiff pursued any of the non-
medical remedies.  In fact, Plaintiff's diabetes continued to be
poorly controlled, and he eventually became insulin dependant.  (R. at
272-73)  His primary care physician, John Mark Ryan, M.D., expressed
frustration that Plaintiff continued to gain weight and not exercise.
(R. at 272)    Furthermore, the general trajectory of Dr.
Rivinus's notes, their increasing brevity, and the final notation
on October 20, 1997, that Plaintiff was "doing well," (R. at 175),
support the conclusion that Plaintiff's condition was both not
severe and had "responded well" to treatment, (R. at 210).

There are no records of treatment for a year after Dr.
Rivinus described Plaintiff as "doing well," (R. at 175), until
November 10, 1998, when Plaintiff was first seen by Dr. Zeldin.
(R. at 269)  While Plaintiff would like the Court to read
additional treatment into the record based upon the fact that
Plaintiff came to Dr. Zeldin on different medications or dosages
than he was taking when he last saw Dr. Rivinus, see Plaintiff's
Reply at 4-5, the Court declines to assume the ALJ's function,
see Irlanda Ortiz, 955 F.2d at 769 ("It is the responsibility of
the [Commissioner] to determine issues of credibility and to draw
inferences from the record evidence."); Rodriguez v. Sec'y of
Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("In
reviewing the record for substantial evidence, we are to keep in
mind that '[i]ssues of credibility and the drawing of permissible
inference from evidentiary facts are the prime responsibility of

the [Commissioner].")(quoting Rodriguez v. Celebrezze, 349 F.2d
494, 496 (1st Cir. 1965)).  The Court finds that, based on the
evidence generated prior to Plaintiff's date last insured, the
ALJ could reasonably have concluded that Plaintiff did not suffer
from a severe mental impairment prior to the expiration of his
insured status.  See Irlanda Ortiz, 955 F.2d at 769 ("We must
uphold the [Commissioner's] findings ... if a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support his conclusion.")(quoting Rodriguez v.
Sec'y of Health & Human Servs., 647 F.2d at 222)(alteration in
original); see also Lizotte v. Sec'y of Health & Human Servs.,
654 F.2d 127, 131 (1st Cir. 1981)("Although we as the trier of
fact might have reached an opposite conclusion, we cannot say
that a reasonable mind could not have decided as did the
[Commissioner] ....").

      Plaintiff argues that Dr. Zeldin's evidence is relevant to
the issue of the onset of disability prior to Plaintiff's date
last insured and that the retrospective nature of Dr. Zeldin's
opinion does not undermine the competency of his evidence.
Plaintiff's Mem. at 17.  "[M]edical evidence generated after a
claimant's insured status expires may be considered for what
light (if any) it sheds on the question of whether claimant's
impairment(s) reached disabling severity before claimant's
insured status expired." Lord v. Apfel, 114 F.Supp.2d 3, 16
(D.N.H. 2000).  However, "[r]etrospective diagnoses (medical
opinions of claimants' impairments which relate back to the
covered period) may be considered only to the extent that such
opinions both substantiate a disability that existed during the
eligible period and are corroborated by evidence contemporaneous
with the eligible period." Marcotte v. Callahan, 992 F. Supp.
485, 491 (D.N.H. 1997); see also Lord, 114 F.Supp.2d at 15 n.17
(quoting Marcotte).

Here, Dr. Zeldin's opinion in his supplemental RFC that the clinical history is sufficient to conclude that Plaintiff has been moderately or severely impaired in nearly all relevant categories since 1993, (R. at 239), and that he is "entirely incapable of working in any job," (R. at 241), is not corroborated by evidence contemporaneous with the eligible period.  First, as there is no record of psychological treatment prior to February 26, 1996, Dr. Zeldin's opinion that Plaintiff's impairments had been severe since at least 1993 was apparently based on Plaintiff's own statement to Mr. DeConno in 1996 that his "problems ha[d] been going on for approximately three years," (R. at 164).  It is well established that a claimant's complaint's alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

Second, the notes from Plaintiff's treating psychiatrist, Dr. Rivinus, during the period April 4, 1996—October 27, 1997, while providing diagnoses, do not address the functional effect of those diagnoses.  See also Musto v. Halter, 135 F.Supp.2d 220, 234 (D. Mass. 2001)(noting that plaintiff's "own doctor did not evaluate the effects of his depression on his ability to work").  Dr. Zeldin's conclusion, then, that the clinical history is sufficient to establish severe mental impairments as early as 1993, (R. at 239), is not supported by the record and is directly contradicted by the consistent reports of two non-examining physicians who found no evidence of severe mental impairment during that period, (R. at 208-10, 228-37).

Furthermore, Dr. Zeldin's conclusion that Plaintiff is "totally and permanently disabled," (R. at 249), is an opinion on an issue reserved for the ALJ, see Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he determination of the ultimate question of disability is for [the

Commissioner], not for the doctors or for the courts.")(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971)); 20 C.F.R. § 404.1527(e) (2005).[15]  Accordingly, the ALJ was not required to accept it.  See Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."); SSR 96-5p, at *5 ("[E]ven when offered by a treating source, [opinions on issues reserved to the Commissioner] can never be entitled to controlling weight or given special significance.").

It is the ALJ's responsibility to resolve conflicts in the evidence, not the court's.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st cir. 1991); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir.

---

[15] Section 404.1527 provides, in relevant part, that:

Opinions on some issues, such as the examples that follow, are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
(1) Opinions that you are disabled.  We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

. . . .

(3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner ....

20 C.F.R. § 404.1527(e) (2006); see also SSR 96-5p, 1996 WL 374183 (S.S.A.), at *2 ("Under 20 CFR 404.1527(e) and 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability ....").

1987).  Accordingly, the ALJ was entitled to rely upon the
assessments of Drs. Gianetti and Paxson, which he found were
consistent with and supported by the record, and accord little or
no weight to Dr. Zeldin's retrospective opinion, which is not
supported by the record.  The Court concludes that substantial
evidence supports the ALJ's finding that Plaintiff was capable of
performing the full range of light work, undiminished by mental
impairments.

## II. **Whether the ALJ erred as a matter of law by failing to address the retrospective opinion of Plaintiff's treating psychiatrist**

Plaintiff contends that the ALJ committed reversible error
by failing to address the weight accorded, if any, to the
retrospective opinion of treating psychiatrist Edmund Zeldin,
M.D., in violation of 20 C.F.R. § 404.1527(d) and SSR 96-2p.
Plaintiff's Mem. at 15-17.  Defendant concedes that the ALJ did
not discuss Dr. Zeldin's opinion, but argues that if the failure
amounts to judicial error, the error is harmless because,
regardless of Dr. Zeldin's opinion, the ALJ's determination that
Plaintiff was not disabled prior to the date last insured is
supported by substantial evidence.  Defendant's Mem. at 14, 17-
18.

According to 20 C.F.R. § 404.1527(d), "[r]egardless of its
source, we will evaluate every medical opinion we receive ...
[and] ... always give good reasons in our notice of determination
or decision for the weight we give your treating source's
opinion."  20 C.F.R. § 404.1527(d); see also SSR 96-2p, 1996 WL
374188 (S.S.A.), at *5 ("[T]he notice of the determination or
decision must contain specific reasons for the weight given to
the treating source's medical opinion, supported by the evidence
in the case record, and must be sufficiently specific to make
clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight."). Plaintiff is correct that the ALJ neglected to discuss the weight given to Dr. Zeldin's opinion and the reasons for that weight.

The Court has already found, however, that substantial evidence exists in the record to support the ALJ's determination that Plaintiff was not disabled prior to his date last insured, notwithstanding Dr. Zeldin's opinion to the contrary. See Discussion Section I infra at 7-21. Therefore, as remand would not alter the outcome in the instant matter, the Court declines to do so for the empty exercise of having the ALJ describe the weight given to Dr. Zeldin's opinion. See Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999)("[W]hen a reviewing court discovers a serious infirmity in agency decisionmaking, the ordinary course is to remand. But such a course is not essential if remand will amount to no more than an empty exercise.")(internal citations omitted); accord Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); see also Seymour v. Barnhart, No. 02-197-B-W, 2003 WL 22466174, at * 3 (D. Me. Oct. 31, 2003)("We have often held that [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably ha[s] no practical effect on the outcome of the case.")(quoting Bryant ex rel. Bryant v. Apfel, 141 F. 3d 1249, 1252 (8th Cir. 1998))(alterations in original); Freeman v. Barnhart, No. 02-78-P-H, 2002 WL 31599017, at *6 (D. Me. Nov. 20, 2002)("Thus, once more, no useful purpose would be served by remand for further clarification."); Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999) (noting that the

"First Circuit has applied a 'harmless error' rule in Social Security benefit cases")(citing <u>Perez Torres v. Sec'y of Health & Human Servc.</u>, 890 F.2d 1251, 1255 (1st Cir. 1989)).

Plaintiff also suggests that the ALJ violated SSR 83-20, 1983 WL 31249 (S.S.A.), arguing that the "medical opinion evidence may be competent to establish onset of disability even before the date of an individual's first medical examination," <u>see</u> Plaintiff's Mem. at 16. However, SSR 83-20 is inapplicable in the instant matter. SSR 83-20 deals with situations in which the decision-maker must also infer the onset date of disability. <u>See Lisi v. Apfel</u>, 111 F.Supp.2d 103, 111 (D.R.I. 2000)(noting that 83-20 "provides that once a disability has been identified, a medical advisor may be necessary to assist an ALJ in determining the onset date of that disability when the onset date is relevant to a claimant's entitlement to benefits."); <u>see also</u> SSR 83-20, 1983 WL 31249, at *1. Here, as was the case in <u>Lisi</u>, "the ALJ found that [P]laintiff was not under a disability; therefore, no analysis of an onset date was necessary." <u>Lisi v. Apfel</u>, 111 F.Supp.2d at 111.

The Court concludes that the ALJ's error in failing to address the retrospective opinion of Dr. Zeldin is harmless because substantial evidence supports the ALJ's overall conclusion that Plaintiff did not suffer from a severe mental limitation prior to the date last insured. Accordingly, the Court declines to remand on this issue.

**III. Whether the ALJ erred as a matter of law by relying on the Grid to meet Commissioner's burden at step five of the sequential analysis**

Plaintiff argues that the ALJ's reliance on the Grid was improper because Plaintiff's RFC for the full range of light work was reduced by non-exertional mental impairments. Plaintiff's Mem. at 19-20. Defendant counters that as substantial evidence

supports the ALJ's determination that Plaintiff did not suffer
from a significant nonexertional mental impairment, reliance on
the Grid is proper.   Defendant's Mem. at 19-20.

The extent to which an ALJ is permitted to rely on the Grid
at step five depends upon how significantly the claimant's
nonexertional impairment limits the range of jobs he can perform.
Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991).  "[I]f
the applicant has nonexertional limitations (such as mental,
sensory, or skin impairments, or environmental restrictions such
as an inability to tolerate dust) that restrict his ability to
perform jobs he would otherwise be capable of performing, then
the Grid is only a framework to guide [the] decision."  Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001)(second alteration in
original)(internal quotation marks and citations omitted).   In
other words, where there are significant nonexertional
limitations the Grid cannot "direct" a conclusion of non-
disability.   20 C.F.R. § 404.1569a(d) (2006);[16] see also Ortiz v.
Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir.
1989)("In cases where a nonexertional impairment significantly
affects a claimant's ability to perform the full range of jobs he
is otherwise capable of performing, the [Commissioner] must carry
h[er] burden of proving the availability of jobs in the national
economy by other means, typically through the use of a vocational
expert.")(citations and internal quotation marks omitted).   "On

---

[16] 20 C.F.R. § 404.1569a(d) provides in relevant part:

If your impairment(s) and related symptoms ... affect your
ability to meet both the strength and demands of jobs other
than the strength demands, we will not directly apply the
rules in appendix 2 unless there is a rule that directs a
conclusion that you are disabled based upon your strength
limitations; otherwise the rule provides a framework to guide
our decision.

20 C.F.R. § 416.969a(d) (2006).

the other hand, should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Ortiz, 890 F.2d at 524; see also id. ("If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability.")(footnote omitted); SSR 83-14, 1983 WL 31254 (S.S.A.), at *6 ("Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.").

It is not entirely clear how the ALJ used the Grid to come to a conclusion that Plaintiff was not disabled prior to the date last insured.  In his decision, the ALJ first reported using the Grid "as a guideline in conjunction with the evidence discussed herein regarding the claimant's non-exertional limitations, and in conjunction with Social Security Ruling 85-15, [to find] that the claimant has not been under a "disability" as defined in the Social Security Act at any time through the lapse of his disability insured status on September 30, 1997."  (R. at 24) (internal citations omitted).  While not explicitly stating that he used the Grid as a "framework to guide [his] decision," 20 C.F.R. § 404.1569a(d), the ALJ's stated use of the Grid as a "guideline" suggests something less than the mechanical application claimed by Plaintiff, see Plaintiff's Mem. at 20.

Later in his opinion, however, the ALJ stated that the Grid "direct[s] a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled."  (R. at 25)  Even if the ALJ did use the Grid to "direct" his conclusion, as this statement indicates, this is

proper where Plaintiff's non-exertional impairment only
marginally reduces the range of work he would otherwise be able
to perform, see Ortiz, 890 F.2d at 524; see also Heggarty, 947
F.2d at 996). Here, Dr. Zeldin was alone in finding that
Plaintiff's mental condition significantly limited his ability to
function, (R. at 238-48), and the Court has already determined
that the ALJ did not err in declining to credit his opinion, see
Discussion Section II infra at 21-23. By contrast, Dr. Paxson
found no evidence to suggest that Plaintiff's mental conditions
significantly affected his ability to work. (R. at 235)
Accordingly, because the ALJ could reasonably have found that
there was no significant nonexertional limitation, Lizotte v.
Sec'y of Health & Human Servs., 654 F.2d 127, 131 (1st Cir.
1981), the ALJ could properly rely on the Grid, Ortiz, 890 F.2d
at 524.

### Summary

For the reasons stated above, I find that the ALJ's
determination that Plaintiff's mental impairments were not severe
is supported by substantial evidence in the record. I further
find that the ALJ's failure to specifically address the
retrospective opinion of Plaintiff's treating psychiatrist is
harmless error. Finally, the ALJ's utilization of the Grid at
Step Five was not in error. Accordingly, I conclude that remand
is not warranted.

### Conclusion

The court finds that the Commissioner's decision that
Plaintiff is not disabled is supported by substantial evidence in
the record and that any legal error is harmless. Accordingly, I
order that Defendant's Motion to Affirm be granted and that
Plaintiff's Motion to Remand be denied.

So ordered.

26

ENTER:

DAVID L. MARTIN
United States Magistrate Judge
September 12, 2006

BY ORDER:

Deputy Clerk

27